UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHNNY WHEELER,<br><br>              Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Acting Commissioner of Social Security, Secretary, Health & Human Services,<br><br>              Defendant. | Case No. 04-5776FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 3, 2006 |

Plaintiff, Johnny Wheeler, has brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by *Mathews v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

REPORT AND RECOMMENDATION

Page - 1

FACTUAL AND PROCEDURAL HISTORY

The plaintiff is currently 41 years old.[1] Tr. 78. He has a high school education and past work experience as a janitor, grounds keeper, construction laborer, and a cook helper. Tr. 541-42.

On July 31, 2001, the plaintiff filed an application for SSI benefits, alleging disability due to post traumatic stress disorder, bipolar disorder, hand problems, and back pain. Tr. 13. His application was denied initially and on reconsideration. Tr. 13. The plaintiff timely requested a hearing, which was held on January 24, 2004, before an administrative law judge ("ALJ"). Tr. 13. At the hearing, the plaintiff, represented by counsel, appeared and testified. Tr. 13. A medical expert and a vocational expert also appeared and provided testimony. Tr. 13.

On July 3, 2004, the ALJ issued a decision finding the plaintiff not disabled. Tr. 27. Specifically, the ALJ found in relevant part as follows:

(1)  at step one of the disability evaluation process, the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date;

(2)  at step two, the plaintiff had "severe" impairments consisting of substance abuse in near remission, depressive disorder, post traumatic stress disorder, lower back strain, and obesity;

(3)  at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)  at step four, the plaintiff had the residual functional capacity to

---

[1] The Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION

Page - 2

perform a full or significant range of light work and was unable to perform his past relevant work; and

(5) at step five, although the plaintiff's limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202 as a framework for decision-making, he could perform a significant number of jobs in the national economy.

Tr. 26. The plaintiff's request for review was denied by the Appeals Council on October 13, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5.; 20 C.F.R. § 416.1481.

On November 17, 2004, the plaintiff filed a complaint in this court seeking review of the ALJ's decision. Dkt. 4. In his opening brief, the plaintiff argues that the ALJ's decision should be reversed and remanded to the Commissioner for an award of SSI benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in failing to attach a Psychiatric Review Technique Form (PRTF) to the hearing decision;

(b) the ALJ failed to give proper weight to the opinions of the plaintiff's treating physicians;

(c) the ALJ improperly assessed the plaintiff's credibility;

(d) the ALJ erred in not seeking a consultative examination of the plaintiff;

(e) at step four, the ALJ erred in finding that the plaintiff can perform a full range of light work under the framework of the Grids;

(f) at step five, the ALJ erred in finding that the plaintiff can perform other work;

Dkt. 16.

In its response to the plaintiff's opening brief, the defendant contends that Administrative Law Judges are no longer required to attach a PRTF to decisions involving mental impairments,

REPORT AND RECOMMENDATION

Page - 3

that the ALJ properly resolved the conflicting medical evidence, that the ALJ was not required to seek a consultative exam, and that the ALJ properly determined the plaintiff's residual functional capacity and his ability to do other work. Dkt. 20.

For the reasons set forth below, the undersigned agrees, and recommends that the court deny the plaintiff's request and affirm the ALJ's decision.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Carr v. Sullivan*, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence supports more than one rational interpretation, the court must uphold the Commissioner's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I.      <u>The ALJ did not err by failing to attach a PRTF</u>

The plaintiff first contends that the ALJ's failure to attach a Psychiatric Review Technique Form (PRTF) to the decision constitutes grounds to remand the case. Dkt. 16 at 8. While the ALJ is required to incorporate the findings and conclusions necessary in applying the psychiatric review technique, the ALJ need not complete and attach a psychiatric review technique form.

REPORT AND RECOMMENDATION

Page - 4

> Even though we apply the same technique at the administrative law judge hearing and Appeals Council levels as we do at the initial and reconsideration levels, administrative law judge and Appeals Council decisions are quite different in form from determinations prepared by a State agency. Administrative law judge and Appeals Council decisions include a more detailed explanation of the findings and conclusions reached, supported by a narrative rationale. The decisions under these final rules must include, among other things, the pertinent findings and conclusions required in the application of the technique. Consequently, requiring that a PRTF be appended to an administrative law judge or Appeals Council decision would only repeat information already required in the decision under these final rules, and renders the PRTF redundant. For this reason, these final rules do not require administrative law judges or the Appeals Council to complete the form or to attach the form to their decisions, just as we do not require them to complete or attach RFC assessment forms to their decisions.

65 FR 50746, 50757-58 (2000). The transcript of the hearing demonstrates that the ALJ did incorporate the appropriate findings and conclusions and actually made reference to the PRTF. Tr. 530. The court concludes that the ALJ's failure to attach a PRTF was not in error.

II.     The ALJ properly weighed the medical evidence

Mr. Wheeler contends that the medical evidence in this case was not conflicting but that the ALJ "mischaracterized the opinion evidence." Dkt. 16 at 14. The plaintiff specifically alleges that the ALJ mischaracterized evidence that he was mentally impaired and experiencing depression and flashbacks in July of 2001. He also alleges that none of the symptoms he experienced after July of 2002 can be attributed to drug or alcohol abuse because "there was no indication of drug or alcohol abuse that would be material after July, 2002." Dkt. 16 at 12. The defendant contends that the medical evidence was conflicting and that the ALJ properly resolved the conflicts. Dkt. 20 at 8.

The ALJ is responsible for determining credibility and resolving ambiguities and

REPORT AND RECOMMENDATION

Page - 5

conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The ALJ "need not discuss *all* evidence presented" and must only explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002);  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A nonexamining

REPORT AND RECOMMENDATION

Page - 6

physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.*; *Tonapetyan*, 242 F.3d at 1149.

A claimant may not be found disabled if alcoholism or drug addiction would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J)). Similarly, the Social Security Regulations also require that the Commissioner determine whether "drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id.* (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).

To determine whether a claimant's alcoholism or drug addiction is a materially contributing factor, the ALJ first must conduct the five-step disability evaluation process "without separating out the impact of alcoholism or drug addiction." *Id.* at 955. If the ALJ finds that the claimant is not disabled, "then the claimant is not entitled to benefits." *Id.* If the claimant is found disabled "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'" *Id.* (citing 20 C.F.R. §§ 404.1535, 416.936). Thus, if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

In April 2001, Mr. Wheeler saw Dr. Deborah Haynes, M.D., a psychiatrist at Community Health Care, who diagnosed "Probable Bipolar illness" and prescribed

Depakote. Tr. 295. Dr. Haynes completed two psychological evaluations. In the evaluation completed on May 3, 2001, she diagnosed him with bipolar with mixed manic and depressed symptoms and Post Traumatic Stress Disorder delayed severe. Tr. 310. Dr. Haynes found there was an indication of alcohol or drug abuse but was of the opinion that Mr. Wheeler's conditions were not caused by substance abuse. Tr. 310. Dr. Haynes also noted that "alcohol use [is] known to exacerbate depression. Pt binge drinker." Tr. 311. She also noted, on a subsequent July 2001 evaluation, that alcohol or drug abuse was "not a current factor." Tr. 317. The ALJ did not give significant probative value to Dr. Haynes's conclusion that substance abuse was not related to Mr. Wheeler's conditions. Tr. 16.

There is substantial evidence in the record to support the ALJ's determination that Mr. Wheeler's conditions are related to his substance abuse. Mr. Wheeler was admitted to the emergency room for chest pains after a cocaine overdose in October of 2000, and it was noted by the treating psychiatrist that his "suicidal ideation [was] associated with the use of cocaine." Tr. 194. The psychiatrist also included in the Axis I diagnosis cocaine and alcohol dependence. *Id.* Mr. Wheeler's self reports further suggest a causal connection between his substance abuse and depression: "Patient has been using ETOH and crack as a result of being involved with other drug users at the homeless shelter. . . . On the night of admission the patient started drinking and smoking crack. His mood became more and more depressed." Tr. 184. Furthermore, there is substantial evidence that drug and alcohol abuse were current factors at the time when Mr. Wheeler was seeing Dr. Haynes. For example, he saw Dr. Haynes on April 24, 2001, and his blood alcohol content was .13 on that day. Tr. 239. His uranalysis tested positive for cocaine, opiates, and ethanol on May

12, 2001. Tr. 242. This evidence substantially supports the ALJ's conclusion that Mr. Wheeler's conditions are related to his substance abuse.

III.     The ALJ properly evaluated Mr. Wheeler's credibility

The plaintiff contends that the ALJ discounted Mr. Wheeler's credibility solely for reasons pertaining to his drug and alcohol abuse. Dkt. 16 at 14.

Questions of a claimant's credibility are solely within the purview of the ALJ. *Sample*, 694 F.2d at 642. The court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the court may not reverse a credibility determination based on contradictory or ambiguous evidence. *Id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid so long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834. The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Id*.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset,

REPORT AND RECOMMENDATION

Page - 9

duration, and frequency of symptoms. *Id.*

       The ALJ found that "[t]he claimant's history of alcohol and drug abuse, and his denial and minimization of his usage further impugns his credibility." Tr. 26. There is substantial evidence supporting the ALJ's determination that the plaintiff lacked credibility due to his persistent drug and alcohol abuse and his minimization of usage. He has given vague accounts of his sobriety, claiming to be "mostly clean." Tr. 170. In October of 2000, he apparently denied having substance abuse issues just days after overdosing on cocaine. Tr. 197, 194. This example is illustrative of Mr. Wheeler's pattern of denying, or being less than forthcoming about, his drug abuse issues during the time periods separating his documented drug use. For example, Mr. Wheeler's urinalyses tested positive for cocaine and cannabinoids in August (Tr. 162) and September (Tr. 162-164) of 2000, he admitted to smoking crack in October of 2000 (Tr. 177, 184), his urinalysis tested positive for cocaine in November of 2000 (Tr. 204), he used heroin for the first time in April of 2001 (Tr. 229), and he used cocaine on two separate occasions in May of 2001 (Tr. 225, 209). During this period of persistent drug use, there was a five month period of time during which Mr. Wheeler may have remained clean of drugs and alcohol. Medical reports during that time period demonstrate that he was not forthcoming about his drug use, either reporting that he does not use drugs or failing to disclose his history of drug abuse when asked about his social history. Tr. 300, 235. Similarly, he "denied any significant substance abuse history" during the period of time between his routine cocaine use in April and May of 2001 and his reported regular use of marijuana in August of 2002. Tr. 245, 229, 225, 343.  Mr. Wheeler also discounts his most recent drug episode, cocaine use in February of 2003, as a result of

merely being in the wrong place at the wrong time. Tr. 436. Mr. Wheeler continues to minimize his substance abuse issues in his arguments to this court. Specifically, he contends that "there was no indication of drug or alcohol abuse that would be material after July, 2002," essentially asking the court to discount his cocaine use in February of 2003 and his reported weekly use of marijuana and alcohol. Dkt. 16 at 12, Tr. 436.

Moreover, there is substantial evidence supporting the ALJ's determination that Mr. Wheeler has engaged in some drug seeking behavior, further undermining the plaintiff's credibility. *See* Tr. 23. After being admitted for a cocaine overdose in October of 2000, the plaintiff complained of heartburn and specifically sought a muscle relaxer. Tr. 195. Other notes taken during this hospital visit indicate Mr. Wheeler's eagerness to take medication (Tr. 195) and his fixation on physical complaints and establishing eligibility for benefits and services (Tr. 197-98). Mr. Wheeler went to Tacoma Family Medicine complaining of back pain in 2003. Upon examination, Kerry G. Watrin, M.D. commented, "I suspect that there is a significant secondary gain in his case in his specific request for Percocet." Tr. 322. These incidents constitute substantial evidence supporting the ALJ's conclusion that Mr. Wheeler lacked credibility because of his persistent denial of his history of drug and alcohol abuse and his drug seeking behavior.

The ALJ gave several other reasons for finding the plaintiff not entirely credible. First, the ALJ found that the plaintiff's statements were inconsistent with the medical records. Tr. 23. The ALJ found that Mr. Wheeler's statements concerning "his impairments and its [sic] impact on his ability to work are not entirely credible." Tr. 23. With respect to Mr. Wheeler's physical ailments, the ALJ found that Mr. Wheeler's back and hand

REPORT AND RECOMMENDATION

Page - 11

problems improved with medication. Tr. 23. The record substantially supports this conclusion. Mr. Wheeler was "[d]oing well on Darvocet" for his back pain and medication resulted in "improvement in both hands." Tr. 268, 290. His mental impairments similarly improved with medication, and Mr. Wheeler reported that the Depokate was working. Tr. 288.

Second, the ALJ found that Mr. Wheeler engaged in activities that are inconsistent with the level of impairment he reported. Tr. 23. The record supports this conclusion. For example, in August of 2002, he was walking one to two miles a day for twenty minutes. Tr. 342. He is also able to clean and maintain his apartment, watch television programs in their entirety, handle his bills, and help his son with his homework. Tr. 506, 525, 511, 518, 526.

Finally, the ALJ found that Mr. Wheeler lacked credibility because he ignored the recommendations of his doctors, suggesting that his symptoms may not have been as serious as he contended. Tr. 23. This conclusion is supported by substantial evidence. For example, Mr. Wheeler failed to comply with outpatient services (Tr. 198); was denied Percocet by Dr. Kathryn McKenzie, M.D. because he had refused to get an x-ray or go to physical therapy (Tr. 319); failed to go to physical therapy despite the recommendation of Todd L. Chambers, M.D. (Tr. 332); and did not take his medication regularly (Tr. 363). The ALJ gave several reasons for finding that Mr. Wheeler was not entirely credible, and these reasons are supported by substantial evidence.

IV.     The ALJ's failure to seek a consultative examination was not made in error

Mr. Wheeler contends that if the ALJ found that he lacked credibility, the ALJ should have sought a consultative examination. Dtk. 16 at 15-16. The ALJ in a social

security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This duty extends to both represented and unrepresented claimants. *Id.* When the claimant is unrepresented, however, the ALJ must be particularly diligent. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to fully develop the record is also heightened where the claimant is mentally ill and therefore unable to protect his own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288. The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.*; *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

      The ALJ did not seek a consultative examination of the plaintiff. The ALJ's duty to supplement the record was not triggered in this case. There was substantial evidence documenting Mr. Wheeler's mental and physical impairments and his substance abuse both before and during the period in question. Moreover, neither the ALJ nor the testifying medical expert found that the record was too ambiguous to make conclusive findings. *But see Tonapetyan*, 242 F.3d at 1150 (record ambiguous where ALJ relied heavily upon testimony of medical expert who was willing to give only tentative diagnoses and expressed concern that the record was incomplete). The ALJ did not err in failing to seek a consultative examination of the plaintiff.

V.  **The ALJ properly assessed the plaintiff's residual functional capacity and found that he can perform other work**

Mr. Wheeler contends that the ALJ's finding is erroneous because it does not include the additional limitation that he is unable to stand for more than one hour and does not reflect his inability to maintain concentration, his impaired memory and social functioning, his inability to consistently cope with daily activities, and his back and heel pain. Dkt. 16 at 10-11. The plaintiff makes no citation to the record to support limitations pertaining to his heel and back pain.

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work and at step five to determine whether he or she can do other work. *Id.* Residual functional capacity is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." *Id.* The ALJ must therefore consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> [T]he undersigned finds, that in the absence of drugs and alcohol, with the physical limitations viewed in the light most favorable to the claimant, he retains the residual functional capacity to perform a full range of light work or work that requires lifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours total in an 8-hour day with normal breaks, and sitting 6 hours total in an 8-hour day with normal breaks. He is limited to occasional crouching. Additionally, he can perform simple, routine, repetitive one and two step tasks.

Tr. 24.

There is substantial evidence in the record to support the ALJ's determination that Mr. Wheeler can perform light work in the absence of drugs and alcohol. On September 19, 2001, Christina H. Rasmussen, Ph.D. conducted a psychological examination of the plaintiff upon the request of the Department of Social and Health Services. Tr. 245. Mr. Wheeler denied any significant history of substance abuse at the time. Tr. 246. Dr. Rasmussen concluded as follows:

> Mr. Wheeler demonstrated deficits in areas measuring cognitive flexibility. His memory deficits may be related to emotional distractions, rather than organic factors.
>
> Mr. Wheeler can understand, carry out, and remember simple instructions. He also demonstrated an ability to learn and remember new information, although at a slower than average pace. He was able to sit still and maintain persistence and pace throughout the entire evaluation.

Tr. 248-249. These conclusions support the ALJ's finding that Mr. Wheeler can perform light work. Dr. Kenneth M. Asher, the medical expert who testified at the hearing, concurred with these results. He opined that Mr. Wheeler's functioning was probably better

REPORT AND RECOMMENDATION

Page - 15

than what Dr. Rasmussen reported because the report made no mention of Mr. Wheeler's drug abuse and because Mr. Wheeler was probably using drugs to some extent during that period of time. Tr. 534-35.

On November 11, 2001, John Robinson, Ph.D., a non-examining physician, made a Mental Residual Functional Capacity Assessment and concluded as follows:

> If clean and sober for 6 months, Claimant would be able to do simple tasks easily, and up to detailed familiar hands-on tasks, and can pay attention for 2 hours. He would need low-social-demand work, like his prior kitchen work, but can tolerate incidental public contact at the level of a junior college student. He may need DVR to help find a new niche placement if his physical problems with his hands rule out his prior accustomed work [defer to MD's judgment on that].

Tr. 252. His assessment also concluded that Mr. Wheeler's functional limitations were exacerbated by drug abuse and alcoholism in all categories. Tr. 263. Moreover, Dr. Robinson concluded that without the presence of substance abuse, Mr. Wheeler's restriction of activities of daily living would be mild; his difficulties maintaining social functioning, concentration, and persistence or pace would be moderate; and he would experience no repeated episodes of decompensation. Tr. 263. This summary of Mr. Wheeler's residual functional capacity also supports the ALJ's finding.

Moreover, Mr. Wheeler's daily activities lend further support to the ALJ's finding that the plaintiff can perform light work. Specifically, the plaintiff is able to watch television (Tr. 525), mail and take care of his bills (Tr. 511, 518), help his son with homework, (Tr. 526), feed and dress his son (Tr. 524), take his son to the bus stop (Tr. 524), occasionally prepare meals and do laundry one or two days in advance (Tr. 510), handle his personal hygiene (Tr. 525); and clean and maintain his apartment (Tr. 506). These activities are

REPORT AND RECOMMENDATION

Page - 16

consistent with light work.

Mr. Wheeler does not cite to the record to support his contention that the ALJ failed to account for his back and heel pain. There is substantial evidence that Mr. Wheeler's back pain is treatable with medication. For example, he does "well on darvocet for back pain." Tr. 268. There is also evidence that Mr. Wheeler's complaints of back pain were insincere. For example, he repeatedly refused physical therapy despite the recommendations of his treating physicians Tr. 338, 332, 314, 319. He specifically requested Percocet, but his request was denied because he had refused x-rays and physical therapy, and his medical file notes the possibility of "significant secondary gain in his case in his specific request for Percocet." Tr. 319, 321. Also, the record is almost completely devoid of any mention of Mr. Wheeler's heel pain. On July 31, 2003, Mr. Wheeler refused to demonstrate his ability to walk on his heels, contending that his heels were painful. Tr. 322. There is no mention of heel pain in subsequent medical records and when asked about his ability to stand and walk, Mr. Wheeler referred only to back pain and did not mention his heels. Tr. 543. The plaintiff does not cite to the record to support his assertion that his heel and back pain limit his ability to work.

VI.     <u>The ALJ did not err in making reference to the Grids</u>

Mr. Wheeler contends that the ALJ erred in mechanically employing the Grids to determine that he could perform a significant number of jobs in the national economy. Dkt. 16 at 9. Specifically, Mr. Wheeler contends that if his non-exertional limitations limit the range of work he is able to perform and the Grids do not apply.

If a claimant cannot perform his or her past relevant work, at step five of the

REPORT AND RECOMMENDATION

Page - 17

disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can make this determination by employing the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100-1101. The Grids may be used if they "*completely and accurately* represent a claimant's limitations." *Id*. at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." *Id.* (emphasis in the original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is inappropriate. *Ostenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *Tackett*, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). "Non-exertional" impairments or limitations are those "other than the strength demands" of a particular job, including pain, mental impairments, and manipulative, postural and environmental limitations. 20 C.F.R. 416.969a(c); *see also Tackett*, 180 F.3d at 1102.

The ALJ did not rely solely on the Grids as the plaintiff contends. Rather, she obtained the testimony of a vocational expert who discussed Mr. Wheeler's capacity with respect to several specific jobs: solderer, assembler of small products, newspaper delivery person, ticket seller. Tr. 546-550. The ALJ did not err in referencing the Grids.

### III. CONCLUSION

Based on the foregoing analysis, the court should find that the ALJ properly concluded that the plaintiff was not disabled and should affirm the ALJ's decision denying

benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Federal Rule 72(b), the clerk is directed set this matter for consideration on **February 3, 2006**, as noted in the caption.

DATED this 10th day of January, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION

Page - 19